**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  06-cv-01372- REB-PAC

MICHAEL JARMON,

    Plaintiff,

v.

PACIFIC RAIL SERVICES, LLC,
UNION PACIFIC RAILROAD COMPANY,
BNSF RAILWAY COMPANY,
DENVER INTERMODAL EXPRESS, INC., and
PAUL CHRISTENSON,

    Defendants.

## ORDER ON MOTIONS TO DISMISS

**Blackburn, J.**

This matter is before me on the following motions:1) defendant Intermodal Express, Inc.'s **Partial Motion To Dismiss** [#18], filed August 7, 2006; 2) **Defendant BNSF Railway Company's Motion To Dismiss Pursuant to F.R.C.P. 12(b)(6)** [#20], filed August 28, 2006; 3) **Defendant Union Pacific Railroad Company's Partial Motion To Dismiss Plaintiff's Second and Third Claims for Relief Against Union Pacific** [#24], filed August 28, 2006; and 4) defendant Pacific Rail Services, LLC's **Motion To Dismiss** [#26], filed August 28, 2006.  The plaintiff has filed responses, and the defendants have filed replies.

### I. JURISDICTION

I have subject matter jurisdiction under **28 U.S.C. 1331** (federal question) and **28**

**U.S.C. § 1367** (supplemental jurisdiction).

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). I must accept all well-pleaded allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." **Fernandez-Montes v. Allied Pilots Association**, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), **cert. denied**, 538 U.S. 999 (2003). Thus, Rule 12(b)(6) requires dismissal if, taking all well-pleaded facts as true and construing them in the light most favorable to plaintiff, it is clear that he can prove no set of facts entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); **Rocky Mountain Helicopters, Inc., v. Bell Helicopter Textron, Inc.**, 24 F.3d 125, 128 (10th Cir. 1994).

## III. BACKGROUND

For the purpose of resolving the motions to dismiss, the allegations in the Complaint are presumed to be true. I will refer to the Complaint by paragraph number (e.g., ¶ 1). The plaintiff, Michael Jarmon, alleges in his Complaint that he is a self-employed operator of an over-the-road hauler who owns his own semi-tractor rig. Jarmon regularly obtained haul contracts from the Union Pacific and BNSF intermodal yards in Denver, Colorado. Defendants Union Pacific and BNSF operate those yards.

2

Defendant Pacific Rail Services (Pac Rail) controls the loading and unloading of containers onto trucks such as that owned and operated by Jarmon.  Defendant Paul Christenson is employed by Pac Rail as a hostler, and his duties include operating a packer, which is a motorized unit carrying a mechanism that lifts containers onto and off of train cars and trucks.  The packer operated by Christenson is used to handle loads carried by trucks such as the truck operated by Jarmon.

On July 5 and 17, 2004, Christenson harassed Jarmon in various ways while Jarmon was waiting to have his truck loaded at the Union Pacific intermodal yard. ¶ ¶ 14-15.  The July 17, 2004, incident ended when Christenson "violently assaulted Jarmon." ¶ 15.  The police were called as a result of this incident, and Jarmon was arrested and charged with assault, even though he was acting in self-defense against Christenson's attack.  ¶ 16.  On May 25, 2005, Jarmon was found not guilty of all criminal charges brought against him based on the July 17, 2004, incident.  ¶ 17. Jarmon is of African descent, and he alleges that Christenson's actions were motivated by racial animus.

Christenson has made numerous racial statements "indicating his animosity towards minorities and person of color." ¶ 18.  Pac Rail, Christenson's employer, "has known or has had reason to know of Christenson's racial motivation and propensity for violence because of the incidents which have taken place as well as direct evidence of his belligerent and hostile attitude towards minorities." *Id.* Union Pacific and BNSF also were aware of "Christenson's racism and violent propensities." ¶ 19.

On July 21, 2004, Union Pacific and BNSF threatened to pull their contracts with Denver Intermodal if Jarmon was allowed to come back to work at either the Union

3

Pacific or BNSF intermodal yards, or if Jarmon hauled containers from any U.S. location utilizing railroad facilities. ¶ 20. This refusal to do business with Jarmon has continued through June, 2006. Based on these allegations, Jarmon alleges ten claims for relief against the defendants.

Defendant Pac Rail attached to its motion to dismiss one exhibit, a police report concerning the incident involving Jarmon and Christensen. Based on the inclusion of matters outside of the pleadings in Pac Rail's motion to dismiss, Jarmon seeks to convert that motion, and the other motions to dismiss, into motions for summary judgment. Jarmon has cited in his responses a variety of documents outside of the pleadings. Under FED. R. CIV. P. 12(b)(6), I exclude any consideration of the evidence presented by the parties in resolving the motions to dismiss. The motions addressed in this order will be addressed and resolved as motions to dismiss under FED. R. CIV. P. 12(6), and not as motions for summary judgment under FED. R. CIV. P. 56.

## IV.  § 1981

Defendants Pac Rail and BNSF argue that Jarmon's claim under 42 U.S.C. § 1981 must be dismissed for failure to state a claim on which relief can be granted. Jarmon says his § 1981 claim against these two defendants is based on his claim that these defendants improperly interfered with Jarmon's contract with Denver Intermodal Express, Inc. (DIX). *Response* [#39], filed October 2, 2006, p. 13. Again, Jarmon alleges that BNSF and Union Pacific threatened to pull their contracts with DIX if Jarmon were allowed to come back to work at either the BNSF or Union Pacific intermodal yards. ¶ 20. Jarmon alleges also that BNSF and Union Pacific made this threat at the specific request of Pac Rail. *Id.* Jarmon claims that these efforts to

4

interfere with Jarmon's contract with DIX were based on Jarmon's race. ¶¶ 18-19, 25-29. DIX allegedly agreed to the demands of BNSF and Union Pacific. ¶ 20.

"Relief is available under § 1981 where a party discriminatorily uses its authority to preclude an individual from securing a contract with a third party." **Harris v. Allstate Ins. Co.**, 300 F.3d 1183, 1197 (10th Cir. 2002). Both BNSF and Pac Rail argue that Jarmon has not alleged that either of these defendants had sufficient authority to interfere with Jarmon's contract with DIX. I disagree. The allegation that BNSF and Union Pacific threatened to pull their contracts with DIX if Jarmon were allowed back into the intermodal yards, and the allegation that DIX agreed to these demands, indicates that BNSF and Pac Rail had sufficient clout or authority to affect Jarmon's contract with DIX.

Assuming Jarmon's allegations to be true, and construing them in the light most favorable to Jarmon, it is conceivable that Jarmon could prove facts demonstrating that Pac Rail and BNSF had the authority to adversely affect Jarmon's contract with DIX. I conclude also that Jarmon sufficiently has alleged that Pac Rail and BNSF's actions concerning Jarmon's contract with DIX were improper. Pac Rail and BNSF's motions to dismiss Jarmon's § 1981 claim should be denied.

## V. § 1985 & CIVIL CONSPIRACY

Defendants Pac Rail, BNSF, and Union Pacific argue that Jarmon's claim under 42 U.S.C. § 1985 must be dismissed for failure to state a claim on which relief can be granted. Pac Rail and BNSF argue also that Jarmon's civil conspiracy claim must be dismissed for failure to state a claim.

In support of his § 1985 claim, Jarmon alleges that the defendants "have acted

5

in concert, by agreement and understanding, and pursuant to a conspiracy to deprive Jarmon of his rights . . . ." ¶ 32. Claims based on a conspiracy fall within § 1985(3). "The essential elements of a § 1985(3) claim are: 1) a conspiracy; 2) to deprive the plaintiff of equal protection or equal privileges and immunities; 3) an act in furtherance of the conspiracy; and 4) an injury or deprivation therefrom." ***Tilton v. Richardson***, 6 F.3d 683, 686 (10th Cir. 1993). Section 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id*.

Pac Rail, BNSF, and Union Pacific argue that Jarmon has not alleged facts which, if true, show an agreement by the defendants to interfere with the plaintiff's contract with DIX based on a racial animus. While conclusory allegations of a conspiracy are not sufficient to state a claim under § 1985(3), I conclude that Jarmon's allegations are sufficient to state a claim. Jarmon alleges a series of actions by the defendants, which actions led to the termination of Jarmon's contract with IDX. These allegations, if true, could support an inference that the defendants agreed to act together to accomplish the termination of Jarmon's contract with IDX. Similarly, Jarmon sufficiently alleges that Christenson's actions were motivated by racism, that the other defendants were aware of these actions and Christenson's racist motives, and that the defendants essentially adopted this motivation in seeking to have Jarmon's contract terminated. Applying the liberal standard of FED. R. CIV. P. 12(b)(6), Jarmon's allegations are sufficient to state a claim under § 1985(3).

Pac Rail and BNSF argue also that Jarmon's allegations of an agreement among the defendants are not sufficient to support a claim of civil conspiracy. For the reasons

6

outlined above, I disagree. Defendants Pac Rail, BNSF, and Union Pacific's motions to dismiss Jarmon's § 1985(3) claim should be denied, and Pac Rail and BNSF's motions to dismiss Jarmon's civil conspiracy claim should be denied.

## VI.  § 1986

Pac Rail, BNSF, Union Pacific, and Denver Intermodal Express, Inc. (DIX) argue that Jarmon's claim under 42 U.S.C. § 1986 must be dismissed because the allegations in the Complaint demonstrate that this claim was filed outside of the applicable period of limitations. Section 1986 creates a cause of action against any person who, with knowledge of wrongs about to be committed under a § 1985 conspiracy, fails to prevent the commission of those acts. Of course, the defendant in such a claim must have the power to prevent or aid in preventing such actions. Section 1986 contains its own statute of limitations: "But no action under the provisions of this section shall be sustained which has not commenced within one year after the cause of action accrued." 42 U.S.C. § 1986.

Pac Rail, BNSF, Union Pacific, and DIX argue that the key event that caused Jarmon's § 1986 claim to accrue was the refusal by BNSF, Union Pacific, Pac Rail, and DIX to permit Jarmon to work at the intermodal yards. According to the Complaint, this refusal began on or about July 21, 2004.  ¶ 20. Jarmon filed his Complaint on July 14, 2006, more than one year after July 21, 2004. Thus, the defendants argue that Jarmon's § 1986 claim is untimely and barred.

Jarmon concedes that he cannot support his § 1986 claim by relying any alleged failure to prevent wrongs that occurred prior to July 15, 2005, the date one year prior to the filing of his Complaint. *Response* [#38], filed October 2, 2006, p. 4. However, he

7

argues that the defendants are liable for the continuing refusal to permit Jarmon to work in the intermodal yards, which refusal he alleges has continued after July 15, 2005.

¶ 21.  Assuming the allegations of the Complaint to be true, it is conceivable that Jarmon could establish a § 1986 claim against Pac Rail, BNSF, Union Pacific, and DIX based on their actions or refusals to act after July 15, 2005.  These defendants' motions to dismiss the § 1986 claim should be denied.

## VII.  OUTRAGEOUS CONDUCT

Jarmon asserts a state law claim for outrageous conduct against Christenson and his employer, Pac Rail.  Jarmon claims Pac Rail is subject to liability on this claim under the doctrine of *respondeat superior*.  Jarmon alleges that Christenson's "pattern of racial intimidation and incidents of physical violence" were outrageous and utterly intolerable in a civilized society.  Pac Rail argues that Jarmon's allegations do not state a claim for outrageous conduct because Jarmon's allegations concerning Christenson's actions, if true, do not constitute outrageous conduct.  I disagree.  Jarmon's allegations are sufficient to state a claim for outrageous conduct against Christenson.

Pac Rail argues also that it is not subject to *respondeat superior* liability for Christenson's alleged intentional tort.

> Although the commission of an intentional tort may sometimes be within the scope of employment [and thus within *respondeat superior*], the agent's intent in committing the tortious act must be to further the employer's business. However, if an employee commits an intentional tort solely for reasons that do not further his employer's business or cannot be considered a natural incident of employment, the employer cannot be vicariously liable.

***Grease Monkey Intern., Inc. v. Montoya***, 904 P.2d 468, 472 (Colo. 1995) (citations omitted). Christenson's alleged actions cannot be considered to be a natural incident of his employment with Pac Rail. Jarmon has not alleged any facts indicating that Christenson intended to further Pac Rail's business by harassing and attacking Jarmon. Rather, the allegations of the Complaint indicate that Christenson's actions toward Jarmon impeded operations at Pac Rail's yard and that, on complaint from Jarmon, the Pac Rail dispatcher worked to ensure that Jarmon was permitted to proceed with his work. ¶ 14. Jarmon's allegations, if true, do not support a claim for imposition of *respondeat superior* liability on Pac Rail based on Christenson's alleged outrageous conduct. Pac Rail's motion to dismiss the outrageous conduct claim against Pac Rail should be granted.

## VIII.  MALICIOUS PROSECUTION

Pac Rail argues that Jarmon's allegations do not state a claim for malicious prosecution under Colorado law. To establish a claim for malicious prosecution, a plaintiff must show: 1) that the defendant was a party to or assisted in a criminal or civil proceeding; 2) that the proceeding was brought against the plaintiff; 3) that the proceeding was resolved in favor of the plaintiff; 4) that there was no probable cause for the proceeding; 5) that the defendant was actuated by malice in instituting the proceeding; and 6) that the plaintiff was damaged as a result. ***Walford v. Blinder, Robinson & Co., Inc.***, 793 P.2d 620, 623 (Colo. App. 1990).

The incident that was the basis for criminal charges brought against Jarmon took place in an intermodal yard operated by Pac Rail. Jarmon alleges that "Christenson and Pac Rail acting as the complaining witnesses actively instigated and encouraged

9

the institution, prosecution and continuation of the criminal case against Jarmon." ¶ 54. Jarmon alleges a lack of probable cause, that he was acquitted on the criminal charge against him, that Pac Rail acted with malice, and that Jarmon suffered damages. These allegations are sufficient to state a claim for malicious prosecution against Pac Rail. Pac Rail's motion to dismiss the malicious prosecution claim should be denied.

## IX. TORTIOUS INTERFERENCE WITH CONTRACT

BNSF and Pac Rail argue that Jarmon has not alleged that their purported interference with Jarmon's contract with IDX was improper. To establish this claim, Jarmon must allege and prove that these defendants intentionally and improperly interfered with the performance of a contract between Jarmon and a third party. Assuming the allegations in the Complaint to be true, and viewing them in the light most favorable to Jarmon, I conclude that Jarmon sufficiently has alleged that BNSF and Pac Rail's actions concerning Jarmon's contract with DIX were improper. Pac Rail and BNSF's motions to dismiss Jarmon's tortious interference with contract claim should be denied.

## X. PUNITIVE DAMAGES

Pac Rail argues that Jarmon's claim for punitive damages, to the extent that claim is based on Jarmon's claims under state law, must be dismissed. Section 13-21-102 (1.5), C.R.S. prohibits the filing of a claim for exemplary damages in an initial claim for relief. I find that the requirements of that statute are procedural. Under the doctrine established in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), this procedural requirement is not applicable to Jarmon's state law claims in this court. Pac Rail's motion to dismiss Jarmon's claim for punitive damages should be denied denied.

## XI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That defendant Pacific Rail Services, LLC's **Motion To Dismiss** [#26], filed August 28, 2006, is **GRANTED** as to Jarmon's outrageous conduct claim, as alleged in the Sixth Claim for Relief in the Complaint;

2. That defendant Pacific Rail Services, LLC's **Motion To Dismiss** [#26], filed August 28, 2006, otherwise is **DENIED**;

3. That defendant Intermodal Express, Inc.'s **Partial Motion To Dismiss** [#18], filed August 7, 2006, is **DENIED**;

4. That **Defendant BNSF Railway Company's Motion To Dismiss Pursuant to F.R.C.P. 12(b)(6)** [#20], filed August 28, 2006, is **DENIED**; and

5. That **Defendant Union Pacific Railroad Company's Partial Motion To Dismiss Plaintiff's Second and Third Claims for Relief Against Union Pacific** [#24], filed August 28, 2006, is **DENIED**.

Dated March 1, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**